UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FANNY PATRICIA LAROCQUE,

                         Plaintiff,

                                           06-CV-0316-A(F)

                    v.                  **DECISION**
                                         **and ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                         Defendant.

_____

## <u>INTRODUCTION</u>

Plaintiff Fanny Patricia Larocque ("Plaintiff"), brings this action pursuant to the Social Security Act § 216(I) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), finding her eligible for Supplemental Security Income ("SSI") benefits only as of October 27, 2004. Specifically, Larocque alleges that the decision of the Administrative Law Judge ("ALJ") Thomas Mancuso was erroneous because plaintiff's Disability Insurance Benefits ("DIB") and SSI benefits should have been reinstated in accordance with Title II and Title XVI of the Social Security Act.

The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, on the grounds that the ALJ's decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings, or in the alternative for the

case to be remanded. For the reasons discussed below, the Commissioner's motion for judgment on the pleadings is granted and the Plaintiff's cross-motion is denied.

**BACKGROUND**

A. **Procedural History**

In October 1995, Plaintiff filed for and was awarded SSI benefits due to her bipolar disorder. Plaintiff received SSI benefits until January 1999 when her medical condition improved and she was capable of returning to substantial gainful employment. The record shows that she stopped working on August 15, 2000. On March 7, 2001, Plaintiff claims she filed a dual application for DIB and SSI under Tile II and Tile XVI respectively before the Social Security Administration. (Tr. 255-263).[1] On October 22, 2001, claiming that her symptoms had worsened, Plaintiff filed an application solely for DIB alleging disability since August 15, 2000 (Tr. 12, 60-62). Plaintiff's October 2001 application was initially denied (Tr. 22-26). She then filed a request for a hearing, and on October 21, 2004, a hearing was held before ALJ Thomas J. Mancuso (Tr. 264-295). A previous hearing was held on April 20, 2004. However, because the ALJ could not find records of Plaintiff's March 2001 filing and proof that Plaintiff's application was for both DIB and SSI benefits, the hearing was

_____

[1]By Letter Order dated August 12, 2008, this Court ordered Plaintiff to supplement the record with a copy of the March 7, 2001 dual application or proof of such filing. In response, Plaintiff did not submit any copy of any application, nor did she submit any proof that any application was filed on or about March 7, 2001.

postponed to October 2004. (Id.)

In the October 2004 hearing, the Commissioner could still not find proof that Plaintiff's March 2001 application was for both Title II and Title XVI benefits. Ultimately, at the ALJ's request, Plaintiff filed another application for SSI benefits, which was immediately escalated to the hearing level (Tr. 250-252). The hearing transcript dated October 21, 2004 shows that the ALJ advised Plaintiff that she should file an application for SSI benefits on a protective basis (Tr. 293-294). On December 21, 2004, the ALJ found that Plaintiff was not disabled on or before December 31, 2000, and that she was only eligible for the SSI benefits as of October 27, 2004 (Tr. 12-17). This became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on April 13, 2006 (Tr. 3-5). This action followed.

**B.   Medical History**

The Plaintiff referred herself back to the Niagara County Adult Mental Health Clinic in March 2001. The admission note by Dr. Y.H. Bae, consulting psychiatrist, indicates that the Plaintiff referred herself back to the clinic after a two year absence and had been working at the Dale Association as a minority outreach worker. Although she experienced a very good recovery from a major depressive disorder, and was off SSI, the death of her son, Shannon, along with the around-the-clock care responsibilities of family members "finally got to her." In describing her mental

status, the doctor concluded "the above presentation is essentially a carbon copy of her initial opening back in 1997." (Tr. 160) Her admission note to the outpatient program at Buffalo General Hospital on November 4, 2002 acknowledged that she had recently been discharged from the psychiatric unit at Niagara Falls Memorial Medical Center for treatment of depression. "She has had several losses in her life and is processing unresolved grief issues . . . most significant is the death of her 20 year old son." She was diagnosed with major depression. (Tr. 164) Dr. Dhingra, consulting psychiatrist, on September 24, 2002 diagnosed her with major depression, recurrent complicated bereavement and restarted her on Prozac and Trazodone. The admission note in a Niagara Falls Memorial Medical Center inpatient information dated August 6, 2002 stated "Medical precautions: axis I: Major Depression Recurrent - rule out post traumatic stress disorder." The same document indicated that Plaintiff is "depressed, suicidal, [had] multiple deaths recently [as] stressors." (Tr. 191) She was discharged and would return to Lockport Adult Mental Health Clinic for follow-up. She was given a month's supply of Prozac, 40 mg a day. (Tr. 197.) In a psychiatric evaluation by Dr. Dhingra, dated March 20, 2003, he stated that Plaintiff's major depressive episode began in June 2002. Further, Plaintiff was hospitalized for psychiatric issues in August 2002. However, she has been in and out of outpatient mental health treatment since 1995. She received

permanent disability for major depression in the past. (Tr. 205)
Plaintiff's diagnosis is recurrent major depression. For instance,
Plaintiff has missed several appointments due to vegetative
symptoms of depression. (Tr. 206)

**I.   Plaintiff is not entitled to have her benefits reinstated under C.F.R. §416.999a for period earlier than October 27, 2004.**

Section 416.999 concerns the reinstatement of Social Security
benefits for individuals who were previously eligible but were
financially disqualified from receiving their benefits due to
earned income. See 20 C.F.R. §416.999a. To qualify for
reinstatement of benefits, an individual must timely file a written
request under Section 416.999b, after January 1, 2001 and within 60
months of the termination of original benefits. See Id. In
addition, an individual must certify that she is disabled and
unable to do substantial gainful activity because of her medical
condition. Furthermore, to qualify for reinstatement of benefits
under Section 416.999, the individual's current impairment must be
the same or related to the impairment that was used as the basis
for the eligibility she is seeking to have reinstated. See C.R.F.
§416.999b.

Plaintiff argues that her case should have been considered as
one for reinstatement of benefits pursuant to § 416.999 of the
regulations which deals specifically with reinstatement of SSI
benefits. While Plaintiff claims that Plaintiff filed a dual

application for DIB and SSI benefits in March 2001, Plaintiff has been unable to provide proof that any application for SSI was filed on or before March 7, 2001. The only application that was considered by the Commissioner was the October 21, 2001 application filed by Plaintiff. The October 2001 application was specifically for DIB and not SSI. There is no other evidence in the record that Plaintiff filed any other application for SSI benefits from 2001 through 2004. This is problematic for Plaintiff since Plaintiff's October 2001 DIB application would fall under Title II of the Social Security Administration guidelines and not the reinstatement benefits of SSI under Title XVI and 20 C.F.R. §416.999.

On October 27, 2004, at the ALJ's request, Plaintiff filed another application for SSI benefits. At the hearing, the ALJ advised Plaintiff that she should file an application for SSI benefits on a protective basis (Tr. 293-294). The ALJ found that as of October 27, 2004, Plaintiff had been disabled and eligible for SSI benefits. However, the earliest month for which SSI benefits can be paid is the month following the month in which the application was filed. See 20 C.F.R. § 416.999d(a). Accordingly, the ALJ's finding made Plaintiff eligible for SSI at the earliest possible time based on her October 27, 2004 SSI application. While Plaintiff argues that her DIB application filed in 2001 must be deemed to have been an application for expedited reinstatement for her prior SSI benefits, the Court cannot convert a DIB application

into a SSI application. The Court is constrained in this situation to follow the Social Security regulations.

Because Plaintiff has not submitted any evidence to prove that she filed another SSI application from 2001 through 2004, the ALJ's finding that since October 27, 2004, Plaintiff has been disabled and eligible for SSI benefits is affirmed.

### II.   **Plaintiff is not eligible to qualify for DIB benefits**.

The record shows that Plaintiff stopped working on August 15, 2000. (Tr. 60) The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2000. (Tr. 13, 16). Accordingly, to qualify for DIB, Plaintiff had to demonstrate that she was under a disability that began on or before December 31, 2000. At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 15, 2000. At step two, the ALJ found that Plaintiff did not have a medically determinable "severe" impairment during the period August 15, 2000 through December 31, 2000. See Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (Plaintiff has burden of proving at steps two through four of the sequential evaluation process that she had a medically determinable severe impairment, which prevents her from working); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Accordingly, during the time period at issue regarding Plaintiff's claim for DIB, she was not disabled within the meaning of the

Social Security Act. Thus, she was not entitled to DIB under Title II of the Act.

Substantial evidence supports the ALJ's finding that Plaintiff did not have a medically determinable severe impairment from August 15, 2000 through December 31, 2000. The record contains no medical evidence for this specific period. There was no medical evidence of treatment from May 1998 until March 2001. In addition, Plaintiff admitted that after she stopped working in August 2000, she did not seek medical treatment for her mental condition until March 2001. The earliest medical evidence of treatment after Plaintiff stopped working was in March 2001, when she started seeing Dr. Bae and Peter H. Tarbrake in an out-patient clinic. The clinic notes indicated that Plaintiff was treated for major depression in the past, but that she had made a very good recovery and was absent from the clinic for two years. (Tr. 160). At the time of Plaintiff's return to the clinic in March 2001, she was diagnosed with major depressive disorder. (Id.) Based on the evidence in the record, the ALJ found that Plaintiff did not have any severe impairment from August 15, 2000 through December 31, 2000. (Tr. 15, 16). Moreover, the ALJ found that there were no medical signs or laboratory findings to substantiate Plaintiff's claims of mental symptoms during the period from August 15, 2000 through December 31, 2000. (Tr. 14-15).

None of the medical sources expressed any opinion regarding

Plaintiff's mental condition during the time period relevant to Plaintiff's claim for DIB from August 15, 2000 through December 31, 2000. Accordingly, based on a thorough evaluation of the record, the ALJ correctly found that Plaintiff was not disabled from August 15, 2000 through December 31, 2000. <u>See</u> 20 C.F.R. §§ 404.1521 and 416.921. Thus, Plaintiff was not entitled to DIB under Title II of the Social Security Act and the Commissioner's decision is affirmed.

<u>**CONCLUSION**</u>

For the reasons set forth above, I conclude that the ALJ's decision was supported by substantial evidence in the record and, therefore, grant Commissioner's motion for judgment on the pleadings and deny Plaintiff's cross-motion for judgment on the pleadings. Plaintiff's Complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

 s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          August 29, 2008